United States District Court
Southern District of Texas
**ENTERED**
April 08, 2024
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| V. | § | CASE NO. 3:23-cr-00029-29 |
| | § | |
| PATSAMONG SOMKONGMANY | § | |

### <u>OPINION AND ORDER</u>

On April 5, 2024, I ordered that Defendant Patsamong Somkongmany ("Somkongmany") be released subject to certain conditions pending trial. This Opinion and Order explains the reasoning behind that decision.

### BACKGROUND

Somkongmany is 48 years old. He was born in Laos. In 1978, at the age of three, Somkongmany immigrated to the United States with his family. They moved to the greater Dallas area, where Somkongmany lived for approximately 40 years. He then moved to Houston for two years, and Dixon, Oklahoma for another two years before returning to Houston in September 2023. Although Somkongmany is not a United States citizen, his ties to this country are extremely strong.

Somkongmany's father is deceased. His mother, a permanent resident of the United States, lives in Houston. He has four siblings—three sisters and a brother. Two sisters reside in Texas, and one of those sisters, Bounwat Jaelo Somkongmany ("Jaelo"), also lives in Houston. His other sister lives in Connecticut, and his brother resides in New Hampshire. Somkongmany lives with Jaelo at her Houston home, along with his brother-in-law, niece, nephew, mother, and his mother's boyfriend. Somkongmany has two children from previous relationships. Both children live in Texas with their respective mothers. Somkongmany does not possess a passport and has not left the United States since he entered this country 45 years ago.

On December 14, 2023, a grand jury returned an indictment against Somkongmany and 40 other individuals. Somkongmany is charged with

participating in a drug conspiracy and possessing with intent to distribute less than 40 grams of a mixture or substance containing a detectable amount of Fentanyl.

Law enforcement arrested Somkongmany on March 26, 2024 in Houston. During Somkongmany's initial appearance later that same day, the Government moved for pretrial detention. I scheduled a detention hearing for April 3, 2024. At that detention hearing, the Government did not claim that Somkongmany would attempt to flee or would present a danger to the community if released. Instead, the Government argued I should hold Somkongmany in custody pending trial solely because Immigration and Customs Enforcement ("ICE") had placed a detainer against him.[1] The Government expressed concern that ICE might remove Somkongmany from the United States, making him unavailable for trial. In response, Somkongmany's counsel persuasively argued that the existence of an ICE detainer is not a basis for automatic detention pending trial.

After much discussion, I indicated that I planned to release Somkongmany from custody pending trial because he represented neither a flight risk nor a danger to the community. Because Somkongmany's counsel represented to me during the detention hearing that Jaelo would be willing to serve as a third-party custodian, I told the parties that I planned to appoint Jaelo to serve in that role. As a general rule, I require that a proposed third-party custodian appear before me so I can explain a third-party custodian's responsibilities, and confirm the individual's willingness to serve. Because Jaelo did not attend the April 3 detention hearing due to a work commitment, I continued the detention hearing until April 5 and ordered Jaelo to appear at that hearing.

On April 5, I reconvened the detention hearing. At this point, the Government abandoned its previous position that ICE might send Somkongmany

---

[1] "An ICE detainer is a written request to state or local officials, asking them (1) to notify the Department of Homeland Security ('DHS') as soon as practicable before an alien is released and (2) to maintain custody of the alien for up to 48 hours beyond the preexisting release date so that DHS may assume custody." *City of El Cenizo v. Tex.*, 890 F.3d 164, 174 (5th Cir. 2018).

back to Laos, explaining that ICE—at least in the Houston area—has a policy in place not to deport people to Laos.[2] Nonetheless, the Government still asked for Somkongmany to be detained pending trial. Because there is no extradition treaty between the United States and Laos, the Government posited that if Somkongmany does disappear back to Laos, the Government will have no ability to get him back here.

I rejected the Government's new argument, and ordered Somkongmany to be released under certain conditions. Those conditions included, among others, home detention and an ankle monitor. Jaelo appeared at the hearing and confirmed that she would supervise her brother in accordance with all conditions of release, and use every effort to assure his appearance at all scheduled court proceedings. At the close of the hearing, I noted that I would issue a written opinion to further explain my reasoning.

## LEGAL STANDARD

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Under the Bail Reform Act, a defendant shall be released pending trial unless a judicial officer determines "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1); *see also United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989).

> The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning[:] (1) the nature and circumstances of the offense charged . . . ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including—(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of

---

[2] ICE removed only five Laotian citizens from the United States in 2022, and only one Laotian citizen in 2023. *See* U.S. IMMIGR. & CUSTOMS ENF'T, FISCAL YEAR 2023 ICE ANNUAL REPORT 96 (2023).

residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The Bail Reform Act creates a rebuttable presumption in favor of detention in certain types of cases. *See id.* § 3142(e)(2)–(3). One such circumstance arises when a judicial officer has probable cause to believe that a defendant has committed a controlled substance offense that carries a maximum sentence of ten years or more. *See id.* § 3142(e)(3)(A). To rebut the presumption, a defendant bears "only the burden of producing rebutting evidence, not the burden of persuasion." *Hare*, 873 F.2d at 798. If the defendant presents "evidence tending to rebut the presumption," the presumption "nevertheless remains in the case and is a factor to be considered." *United States v. Fortna*, 769 F.2d 243, 251 (5th Cir. 1985).

The determination of whether conditions of release can be imposed that will reasonably assure the appearance of the person as required is made using the preponderance-of-the-evidence standard, while the determination of whether conditions of release can be imposed that will reasonably assure the safety of any other person and the community is made using the clear-and-convincing-evidence standard. *See id.* at 250. If the Government seeks pretrial detention, it bears the burden of persuasion on both determinations but need only prevail on one of them, as "a detention order may rest on a determination that no condition or combination of conditions will reasonably assure either the defendant's appearance *or* the safety of the community." *Hare*, 873 F.2d at 799.

## ANALYSIS

To begin, I note that the rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of the community" applies in this case. 18 U.S.C. § 3142(e)(3). Somkongmany is charged with violations of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846. These offenses carry a maximum sentence of ten years or more. Somkongmany has produced evidence sufficient to rebut the presumption. That evidence shows, among other things, that he has lived in the United States virtually his entire life, he resides with family members in Texas, all living members of his family reside in the United States, and he is presently employed in the Southern District of Texas. *See United States v. Selman*, No. 23-cr-217, 2023 WL 5839596, at *6 (N.D. Okla. Sept. 8, 2023) (finding a defendant rebutted the presumption by showing extensive community ties such as living with her mother, having parents and her daughter living nearby, and working close to the home).

Because the presumption has been rebutted, the question then becomes whether the Government can establish that there are no conditions or combination of conditions that can reasonably assure Somkongmany's appearance at trial, or the safety of the community.

The Government does not assert that Somkongmany presents a danger to the community. And for good reason. The evidence adduced at the detention hearing indicates that the full extent of Somkongmany's criminal activity, as alleged in the indictment, is that he supplied five Fentanyl pills to an undercover law enforcement officer on September 21, 2019. There are no allegations that he has engaged in any criminal activity since, and no evidence that he has ever committed any act of violence or aggression as an adult.

That leaves me to determine whether Somkongmany is a serious risk of flight. He is not. As already detailed, Somkongmany has lived in the United States for the last 45 years, does not possess a passport, and has never left the country. He has strong ties to this district, residing with various family members at his sister's home. I have no reason to believe he has the financial resources to flee, especially since I found him financially eligible to receive the appointment of

counsel. Furthermore, Somkongmany has no history of nonappearance for court proceedings. Notably, the Government did not produce a shred of evidence at the detention hearing that Somkongmany is likely to flee the jurisdiction to avoid criminal prosecution. The Assistant United States Attorney handling this matter admitted on the record at the April 3 hearing that, but for his concern that ICE might deport Somkongmany, there are strict conditions that could be imposed to assure Somkongmany's appearance at trial.

As a general rule, "[a] person without legal immigration status in the United States who is charged with a federal crime is not deprived of the protections afforded under the Bail Reform Act." *United States v. Herrera-Quino*, No. 23-mj-16105, 2024 WL 376677, at *3 (D.N.J. Feb. 1, 2024); *see also United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017) (holding that a defendant is not barred from pretrial release solely based on the fact that he is a deportable alien); *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) ("Congress chose not to exclude removable aliens from consideration for release or detention in criminal proceedings."); *United States v. Solis*, 453 F. Supp. 3d 1161, 1165 (S.D. Iowa 2020) (The Bail Reform Act "applies to all persons charged with a federal crime, regardless of immigration status. . . . Most courts that have examined the issue agree that nothing in the [Bail Reform] Act authorizes the automatic detention of alien persons pending trial."); *United States v. Lozano-Miranda*, No. 09-cr-20005-5, 2009 WL 113407, at *3 (D. Kan. Jan. 15, 2009) (noting that a "defendant's status as a deportable alien alone does not mandate detention").

Even though the record does not contain any evidence suggesting that Somkongmany will try to flee the jurisdiction, the Government initially took the position that the risk of ICE removing Somkongmany prior to trial is sufficient for me to order pretrial detention. That is not—and has never been—the law. The Bail Reform Act requires district courts to consider a number of factors in deciding whether pretrial detention is appropriate and allows federal judges wide discretion in making that assessment. *See United States v. Flores*, 53 F.4th 313, 315 (5th Cir.

2022). If I "accepted the [G]overnment's argument [that any defendant encumbered by an ICE detainer must be held in custody pending trial], Congress's carefully crafted detention plan, set forth at 18 U.S.C. § 3142, would simply be overruled by an ICE detainer." *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009). "If Congress wanted to bar aliens with immigration detainers from eligibility for release, it could readily have said so, but did not." *United States v. Montoya-Vasquez*, No. 4:08-cr-3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009). For this reason, courts across this great nation that have examined this issue—including two Circuit courts—have recognized the absurdity of the Government's stance. *See United States v. Soriano Nunez*, 928 F.3d 240, 245 n.4 (3d Cir. 2019) ("[T]he presence of an ICE detainer and the threat of potential removal alone are not sufficient to deny BRA pretrial release."); *Ailon-Ailon*, 875 F.3d at 1339 ("[T]he risk that a defendant will 'flee' does not include the risk that ICE will involuntarily remove the defendant."); *United States v. Brown*, No. 4-15-cr-102, 2017 WL 3310689, at *4 (D.N.D. July 31, 2017) ("Congress affirmatively extended to alien persons the same protections it affords citizens under the [Bail Reform] Act . . . [and] the court would violate the Bail Reform Act if it detained defendant based only on the fact he is an alien and ICE has filed a detainer."); *Montoya-Vasquez*, 2009 WL 103596, at *4 ("The Bail Reform Act does not permit this court to speculate on the 'risk' that a defendant would not appear . . . due to his being removed from this country by the same government that is prosecuting him.").

As one federal judge noted:

> The government's reading of the [Bail Reform Act] puts the cart before the horse. If the government does not first establish that there is a serious risk defendant will flee, the Court need not consider whether there are any conditions that could reasonably assure defendant's appearance at trial. And, risk of *involuntary* removal pursuant to an ICE detainer does not create a serious risk that a defendant will *voluntarily* flee. An ICE detainer is an externality not under defendant's control.

*United States v. Marinez-Patino*, No. 11-cr-064, 2011 WL 902466, at *4 (N.D. Ill. Mar. 14, 2011) (quotation omitted). Another federal judge explained:

> The problem here is not that defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts. The Executive, in the person of the Attorney General, wishes to prosecute defendant. The same Executive, in the person of the Assistant Secretary of Homeland Security for ICE, may want to deport him. It is not appropriate for an Article III judge to resolve Executive Branch turf battles. The Constitution empowers this Court to apply the will of Congress upon a criminal defendant on a personal and individualized basis. This Court ought not run interference for the prosecuting arm of the government.

*Barrera-Omana*, 638 F. Supp. 2d at 1111–12.

The Government's latest argument is that Somkongmany is a flight risk because he is a Laotian citizen facing serious charges, and Laos will not extradite its own citizens. The approach advocated by the Government, if adopted, would create a *per se* rule that a citizen from any country who does not have an extradition treaty with the United States must be held in custody before his trial. Had Congress wanted district courts to automatically detain the citizens of those countries that will not extradite to the United States (and there are more than 80 countries with which the United States has no bilateral extradition treaty[4]), it could have easily included such language in the Bail Reform Act. It did not do so. In this case, the Government is, in essence, asking me to rewrite the Bail Reform Act to add a presumption that a defendant from a non-extradition country should be detained. A number of courts have expressly rejected the exact argument the Government makes here. *See United States v. Hansen*, 108 F. App'x 331, 332 (6th Cir. 2004) (affirming the release of a Danish defendant back to Denmark because "[t]he bail statute does not . . . require that foreign defendants be detained simply because their return cannot be guaranteed through extradition"); *United States v. Bodmer*,

---

[4] *See* CONG. RSCH. SERV., RL98-958, EXTRADITION TO AND FROM THE UNITED STATES: OVERVIEW OF THE LAW AND CONTEMPORARY TREATIES 42 (2016).

No. 03-cr-947, 2004 WL 169790, at *2 (S.D.N.Y. Jan. 28, 2004) ("The Government further argues that Bodmer has a strong incentive to flee because pursuant to Swiss law, the Swiss government will not extradite Swiss nationals. . . . Even if this is so, this argument alone cannot be a basis for denying bail because if taken to its logical conclusion, no Swiss national would ever be eligible for bail."). To detain based on risk of flight, the Government must show more than "opportunities for flight," and instead must establish an "inclination on the part of [the defendant] to flee." *Hung v. United States*, 439 U.S. 1326, 1329 (1978). In this case, the Government has failed to make such a showing.

In sum, the Government has failed to carry its burden to show that there are no conditions or combination of conditions that will reasonably assure Somkongmany's presence at trial or the safety of the community. I am confident I can put in place conditions to alleviate any risk of flight or danger to the community. As such, pretrial detention is not appropriate in this case.

CONCLUSION

For the reasons identified above, I ordered Somkongmany released from custody pending trial subject to those conditions of release that I imposed separately.

SIGNED this 8th day of April 2024.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE